UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL E. WHITFIELD,

    Plaintiff,

v.                                    Case No. 1:09-cv-1171

COMMISSIONER OF SOCIAL          Hon. Hugh W. Brenneman, Jr.
SECURITY,

    Defendant.

                                 /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on December 10, 1950 (AR 128).[1] He completed two years of college (AR 167). Plaintiff originally alleged a disability onset date of August 31, 2005 (AR 128), which he amended to February 21, 2006 (AR 16). He had previous employment as a car detailer, laborer (including janitorial), factory assembler, machine operator, floor care technician, donut fryer, kitchen helper, kitchen steward, taxi driver and bus driver (AR 169-76). In his disability report, plaintiff identified his disabling conditions as chronic pain in upper back, neck and shoulders, with numbness in his left hand (AR 163). Plaintiff stated that due to this condition his lifting is very limited and he cannot stand for long periods of time (AR 163). On January 30, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying

---

[1] Citations to the administrative record will be referenced as (AR "page #").

benefits (AR 16-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265,

1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, and that he had not engaged in substantial gainful activity since February 21, 2006, the alleged onset date of disability (AR 18). Second, the ALJ found that plaintiff had severe impairments of "degenerative disc disease of the cervical spine, arthritis and substance abuse in remission" (AR 18). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). In this regard, the ALJ reviewed Listing 1.04 (disorders of the spine), Listing 3.00 (respiratory system), Listing 4.00 (cardiovascular system), and Listing 12.09 (substance abuse) (AR 19-20).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b):

> that involves lifting up to 20 pounds occasionally, and lifting and/or carrying up to 10 pounds frequently; standing or walking for approximately 6 hours per 8-hour workday and sitting for up to 6 hours per 8-hour work day [sic] with normal breaks; occasional climbing of ramps or stairs, never climbing ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, or crawling; only occasional rotation, flexion or extension of the neck and occasional overhead reaching bilaterally . . .

(AR 20-21). Based on this determination, the ALJ concluded that plaintiff is capable of performing his past relevant work as a machine operator, work which "does not require the performance of

4

work-related activities precluded by the claimant's residual functional capacity" (AR 23). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act from from February 21, 2006 through the date of the decision (AR 23-24).

**III. ANALYSIS**

Plaintiff has raised four issues with additional sub-issues.

**A.  The Commissioners decision that plaintiff has the RFC to perform limited light work is not supported by substantial evidence because the ALJ failed to consider all medical evidence of record.**

**1.  The ALJ failed to properly weigh Dr. Visser's opinion**

**2.  The ALJ's findings regarding plaintiff's activities of daily living is not supported by the record.**

Plaintiff contends that the ALJ failed to give proper weight to the opinions expressed by an examining physician, Bryan Visser, M.D. Dr. Visser examined plaintiff on October 27, 2008, and diagnosed the following conditions: left upper extremity weakness which has a clinical appearance of a left C5 radiculopathy; neck pain; status post C4-C5 fusion; history of polysubstance abuse; history of hepatitis C; and history of left foot and ankle pain secondary to calcaneal fracture (AR 408). Based on these conditions, the doctor determined that plaintiff had the following limitations:

> Because of his calcaneal fracture, he is unable to participate in a job that requires frequent walking or prolonged standing.
>
> In regard to his upper extremity pain, he needs to avoid a job that requires any type of vocational or greater neck flexion, repetitive neck rotation as well as greater than occasional left hand use.

(AR 408).

Dr. Visser also gave a statement on November 24, 2008, which provided additional details regarding plaintiff's limitations (AR 409-11).[2] In this statement, the doctor noted: that plaintiff's left upper extremity weakness appeared to be left C-5 radiculopathy; that plaintiff had limited range of motion and pain in his cervical spine related to the fusion at C4-5; and that he had a major limitation due to the calcaneal fracture in his left foot, which affected "his ability to walk or stand for any significant period of time" (AR 409). The doctor based his opinion on plaintiff's history, subjective complaints, previous x-rays and range of motion studies performed during the examination, finding that plaintiff's subjective complaints to be consistent with the clinical findings (AR 409).[3] Dr. Visser opined that if plaintiff "was on his feet for more than three hours a day . . . he would have a significant increase in his ankle and foot pain" (AR 410). Based on these findings, the doctor would limit plaintiff's standing, walking, climbing and crouching to three hours or less in an eight hour workday because those activities "will cause significant stress on his ankles" (AR 409-10). The doctor also explained that plaintiff needed "to avoid any type of job that requires prolonged or frequent neck flexion and frequent prolonged neck rotation;" that "any neck rotation" would cause problems; and that plaintiff "needs to minimize the use of his left upper extremity" (AR 410). The doctor clarified that plaintiff should use his left hand 1/3rd of an eight-hour workday or less (AR 410). The doctor also opined that plaintiff's left upper extremity should be limited to lifting a maximum of 15 pounds, with frequent lifting of four pounds or less, with the ability to lift 25 pounds "rarely" with both upper extremities (AR 410-11). Finally, the doctor testified that

---

[2] The doctor subsequently signed and verified the transcript of the statement on December 8, 2008.

[3] In questioning the doctor, plaintiff's counsel referred to plaintiff's "neck issues and the *right* lower extremity issues" (AR 409) (emphasis added). This reference appears to be a misstatement. As previously discussed, plaintiff's injury involved his left lower extremity.

plaintiff could have irritated the nerve root and had some "jamming of the facet joints" causing significant pain above and below the level of the fusion when he fell on some ice in 2006 (AR 411).

The ALJ gave Dr. Visser's opinion little weight because "it is contradicted by the weight of the medical evidence and is inconsistent with plaintiff's high levels of activities of daily living" (AR 22). The ALJ continued:

> After reviewing the medical and other evidence, I find that the claimant is able to maintain a high level of activities of daily living: he reads novels, plays guitar, takes care of his personal needs and his home; and he testified he was able to move a mattress from room to room by himself. He has a past history of drug abuse ending 6 months ago; has limited range of motion of neck; and limited range of motion of the left foot (Exhibit 12F) [AR 409-11 (Dr. Visser's statement)].

(AR 22).

Plaintiff contends that the ALJ failed to assess Dr. Visser's opinion under 20 C.F.R. § 404.1527(d), failed to cite any specific evidence contrary to Dr. Visser's opinion, and failed to show how the doctor's conclusions contradicted plaintiff's high level of activities of daily living. In reaching a decision, the ALJ has the discretion to weigh the medical evidence and to resolve conflicts in that evidence. *See Bradley v. Secretary of Housing and Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988); *King v. Heckler*, 742 F.2d 968, 74 (6th Cir. 1984).

As an initial matter, plaintiff does not explain how the ALJ failed to follow the requirements of § 404.1527(d) as he asserts. This regulation sets forth a number of factors used to evaluate medical opinions. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the court must deem this argument waived.

Next, plaintiff contends that the ALJ failed to cite specific medical evidence which contradicted Dr. Visser's opinion. Here the court agrees.

7

The ALJ noted that plaintiff admitted to cocaine, marijuana and heroin abuse to the VA in July 2004 (more than one year before the alleged disability onset date) (AR 22). The ALJ reviewed various tests performed in 2006: plaintiff's cervical spine x-rays from March 2006 indicated mild disc space narrowing at C5-6; an MRI later that month indicated degenerative disc disease at the C5-6 level with diminished disc height; plaintiff had mild cord compression at C3-4, C4-5 and C6-7; and lumbosacral x-rays from March 2006 indicate minimal degenerative changes with mild disc space narrowing at L5-S1 and anterior osteophytes at L4-5 (AR 19).

The ALJ noted that in June 2006, Dr. Koutainis examined plaintiff and found that while he reported pain, plaintiff had normal range of motion in the cervical spine, lumbosacral spine, and left shoulder (AR 21). Dr. Koutainis found that plaintiff had sensory changes in his left hand compatible with a C7 root injury, the grip on the left was not as strong as the grip on the right, and that he had advanced degenerative joint disease of the cervical spine, making him at risk for spine compression (AR 21). At that time, the doctor felt that plaintiff's signs and symptoms could be falsely negative due to his use of alcohol and risk of peripheral neuropathy, and recommended that he undertake an ongoing serial assessment (AR 21-22).

The ALJ summarized plaintiff's December 2007 examination by Physician's Assistant Roger Bush at the VA as follows: plaintiff "was able to walk on heels and toes; but could [sic] stand on his toes on his left foot because of injury in the past; he had full but slightly decreased range of motion of the spine; no tenderness to palpation or percussion of the spinous processes or transverse processes; deep tendon reflexes were bilaterally the same; no neurological deficits were noted" (AR 22). The ALJ's review of PA Bush's examination includes an apparent typographical

8

error, i.e., VA records reflect that plaintiff stated that he "could *not* stand on his toes on his left foot because he had injured it in the past" (AR 334) (emphasis added).

After reviewing the record, the court concludes that the ALJ has not clearly articulated his reasons for rejecting Dr. Visser's opinion. While the ALJ stated that Dr. Visser's opinions were contradicted by the weight of the medical evidence, he did not explain the "contradicting" medical evidence. In addition, the ALJ's adoption of some of Dr. Visser's opinions, apparently with respect to plaintiff's limited range of motion in his neck and left foot (AR 22, 409-11) is inconsistent with the ALJ's finding that the doctor's opinions were "contradicted by the weight of the medical evidence." In this regard, the ALJ did not refer to the podiatrist's treatment of plaintiff's left foot. For example, in March 2008 the podiatrist found that plaintiff suffered from a sprained ankle, cavus foot and osteoarthritis, noting that "on weigth [sic] bearing the foot is fully compensated with the left more flattened in the arch than the right causing the fibula to imping[e] on the calcanious [sic]" and ordered a custom orthotic (AR 330).

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th

Cir.1984). Here, the ALJ has failed to articulate which of the doctor's opinions are contradicted by the weight of the medical evidence.

Plaintiff also contends that the ALJ erred by failing to address how his activities of daily living contradicted Dr. Visser's limitations. The few examples of plaintiff's activities given by the ALJ did not involve the major limitations identified by Dr. Visser, i.e., constant neck movement or standing on his feet for more than three hours during an eight-hour period. In his function report, plaintiff identified activities consistent with Dr. Visser's restrictions, e.g., reading, spending 45 minutes fixing meals, watching television, doing household chores (laundry and dishes), shopping twice a month for about one hour, and using public transportation (AR 181-85). Plaintiff reported that he could lift about 25 pounds and experienced pain when bending, walking, and climbing a lot of stairs (AR 186). At the administrative hearing, plaintiff testified: that he could walk 1/2 to one mile; that he could stand for up to one hour; that he had no problem sitting; that he helped his daughter move by sliding a mattress on the floor; and that he could lift about 20 to 25 pounds (AR 45-47). Plaintiff testified that even with his orthotic inserts, he limps and his foot hurts so much that he can only stand for up to an hour (AR 61-63). Plaintiff further testified that he could stand for about two to three hours during an eight-hour workday, provided that he could sit down for the remainder of the time (AR 64). In his decision, however, the ALJ failed to articulate how these activities of daily living, which did not appear to involve standing for a long period of time, contradicted Dr. Visser's opinion.

Plaintiff's main problem appears to be his inability to stand for more than two or three hours during the workday. Plaintiff is candid about the fact that he can lift 20 to 25 pounds, can walk 1/2 to one mile and has no problem sitting. While inconsistencies exist in the medical

10

record, the ALJ has failed to articulate how the medical evidence or plaintiff's activities of daily living contradicts Dr. Visser's opinions. In addition, the ALJ's decision appears to be internally inconsistent by rejecting the doctor's opinions, but then adopting some of them. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate the medical evidence, clarify the weight given to Dr. Visser's opinions, discuss the evidence which contradicts doctor's opinion, and explain which, if any, of the doctor's opinions are adopted.

### 3. Plaintiff is entitled to disability under the "Grids" because he has been over age 55 at all relevant times and is limited to sedentary work or less.

The medical-vocational guidelines or grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

The grids only apply to a claimant when all factors (i.e., age, work experience, physical ability and education) meet the requirements as set forth in the grids. "In general, where the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). As the Sixth Circuit explained:

11

> The grid comes into play only when the claimant's characteristics precisely coincide with the grid. In any other situation the grid is used at most for guidance in the disability determination. When the claimant does indeed match one of the grid's patterns, then all the grid does is announce that substantial gainful work in the national economy is available for that particular individual; in other words, once a finding is made that the individual can do light work, for example, the grid operates to declare that light work is available.

*Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 535 (6th Cir. 1981).

The ALJ resolved plaintiff's claim at step four. Because the ALJ did not proceed to step five, the administrative decision did not determine whether plaintiff met the requirements of a particular grid. Even though the ALJ did not address this issue, plaintiff contends that this court should make a determination of plaintiff's disability based upon the grids. Specifically, plaintiff contends a hypothetical question posed the vocational expert (VE) was "essentially consistent" with Dr. Visser's opinion, that in response to this hypothetical question the VE testified that an individual with those limitations would not be able to perform plaintiff's past relevant work, and that "[b]ecause Mr. Whitfield has been over fifty-five years of age all times relevant to this proceeding, he is entitled, under the "Grids" [the medical-vocational guidelines] to a finding of disability beginning February 21, 2006." Plaintiff's Brief at p. 10. Plaintiff is requesting the court to perform a *de novo* review of this matter (i.e., to adopt Dr. Visser's opinion, to find that plaintiff cannot perform his past relevant work, to determine which grid is applicable to plaintiff and then to find him disabled). Such action is outside of the scope of this review. *See Brainard*, 889 F.2d at 681 (the court does not review the evidence *de novo*, make credibility determinations or weigh the evidence). Whether the grids apply is an issue to be addressed by the Commissioner on remand. Accordingly, plaintiff's request is denied.

**B. The Commissioner's decision must be reversed because the ALJ failed to conduct a function-by-function analysis.**

Plaintiff contends that the ALJ failed to complete a function by function analysis of plaintiff's RFC as required by SSR 96-8p.[4] RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *see Cohen*, 964 F.2d at 530.

SSR 96-8p states that "[t]he RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96-8p ("Exertional and Nonexertional Functions). Each exertional function (sitting, standing, walking, lifting, carrying, pushing and pulling) must be addressed separately. *See* SSR 96-8p ("Exertional capacity"). Nonexertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength such as: postural (e.g., stooping and climbing); manipulative (e.g., reaching and handling); visual; communicative (hearing and speaking); mental (e.g., understanding and remembering instructions and responding appropriately to supervision); and the ability to tolerate environmental factors (e.g., tolerance of temperature extremes). *Id.* ("Nonexertional capacity").

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing . . . the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

sustained work-related activities, and explain the resolution of any inconsistencies in the record."

*Delgado v. Commissioner of Social Sec.*, 30 Fed.Appx. 542, at 547-548 (6th Cir. 2002) (citations and quotation marks omitted). As previously discussed, the ALJ did not articulate how the record supports the RFC determination, specifically with respect to the limitations as set forth by Dr. Visser.

**C. The Commissioner's decision that plaintiff can perform his past relevant work is not supported by substantial evidence.**

**1. The hypotheticals given to the VE did not accurately portray plaintiff's mental and physical limitations.**

Here, plaintiff contends that the ALJ erred at step four of the sequential evaluation by finding that plaintiff could perform his past relevant work as a machine operator. The ALJ based this determination on the VE's testimony in response to hypothetical questions. As this court stated in *D'Angelo v. Commissioner of Social Security*, 475 F.Supp.2d 716, 723 (W.D.Mich. 2007):

> It is the claimant's burden at the fourth step of the sequential evaluation to show an inability to return to any past relevant work. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. § 404.1565.
>
> A VE's testimony is not required when the ALJ determines that a claimant is not disabled at step four of the sequential evaluation. *See Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir.2001) (vocational expert testimony is not required until step five of the sequential analysis); *Parker v. Secretary of Health and Human Servs.*, 935 F.2d 270, 1991 WL 100547 at *3 (6th Cir.1991); *Rivera v. Barnhart*, 239 F.Supp.2d 413, 421 (D.Del.2002). However, the ALJ may use a vocational expert's services in determining whether a claimant can perform his past relevant work. 20 C.F.R. § 404.1560(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). *See, e.g., Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir.2006) (observing that the ALJ may use a VE's "expert advice" to assist him in deciding

whether the claimant can perform his past relevant work at step four of the evaluation).

*D'Angelo*, 475 F.Supp.2d at 723-24.

In response to a hypothetical question, which assumed a worker with the restrictions as set forth in the RFC, the VE testified that such a worker could perform plaintiff's past relevant work as a machine operator (AR 41-42). However, the VE further testified that the machine operator position would be eliminated if the worker "was limited to three of eight hours on his or her feet" as Dr. Visser opined (AR 42-43). The ALJ found that plaintiff could perform his past relevant work based upon an RFC determination which did not adequately address Dr. Visser's opinions. Accordingly, this finding is not supported by substantial evidence.

### 2. Plaintiff's past relevant work as a machine operator was performed inconsistently with the RFC and the VE's findings.

Plaintiff also contends that even if he could stand for six hours per eight-hour workday as determined by the ALJ, he could not perform his past relevant work as a machine operator because his job as performed required him to stand for eight hours per workday (AR 172, 237). Plaintiff's claim is without merit. The Social Security Act requires a claimant to show at step four that his impairments are so severe that he is "unable to do his previous work." 42 U.S.C. § 423(d)(2)(A). To meet this requirement, plaintiff must prove "an inability to return to his former *type* of work and not just to his former job." *Studaway*, 815 F.2d at 1076 (citation omitted) (emphasis in original). *See D'Angelo*, 475 F.Supp.2d at 723-24 ("[t]o support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed *or* as ordinarily required by employers throughout the national economy") (emphasis added). Here, while

plaintiff could not perform his own past job as a machine operator (which required standing for eight hours per workday), the VE testified that an individual with plaintiff's RFC could perform that type of work generally (which required standing for only six hours per workday) (AR 68-71). This is sufficient to support the ALJ's finding at Step Four of the Five-Step sequential process that plaintiff was not disabled. Accordingly, plaintiff's claim will be denied at to this issue.

### D. The ALJ improperly rejected plaintiff's testimony.

Finally, plaintiff claims there is no evidence to support the ALJ's finding that he has "high functioning" activities of daily living (AR 22). The court has addressed this issue. *See* discussion in § III.A., *supra*.

## IV. CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth in this opinion. On remand, the Commissioner should re-evaluate the medical evidence, clarify the weight given to Dr. Visser's opinions and explain which, if any, of those opinions are being used to establish plaintiff's RFC. If the Commissioner adopts some or all of Dr. Visser's opinions and determines that plaintiff has a more restrictive RFC, then he should re-evaluate plaintiff's disability claim accordingly. A judgment order consistent with this opinion will be issued forthwith.


Dated: March 28, 2011                       /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge